

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY

STATE OF OKLAHOMA (OK)



DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

| | | |
|---|---|---|
| ISAAC FERREIRA (IF), | ) | **CJ-2024-01461** |
| Plaintiff, | ) | |
| | ) | <u>JURY TRIAL DEMANDED</u> |
| AND | ) | |
| CORDELL & CORDELL (C&C), | ) | William D. LaFortune |
| CORDELL LAW LLP, | ) | |
| CORDELL LLP | ) | |
| Defendant | ) | |

PETITION

COMES NOW IF individually for his cause of action against C&C and alleges:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a resident of Tulsa Co.

2. Defendant is based in OK and has an office location in Tulsa Co, OK.

3. Events occurred in Tulsa Co and exceeded $10,000.00.

4. The venue is proper as Tulsa Co District Court, pursuant to 12§141.

### II. FACTUAL ALLEGATIONS

5. C&C Attorney Bradley Ward (BW):

   1. Acted against his clients specific instructions and best interests.

   2. Did not follow ABA/OBA guidelines.

6. BW was informed as follows on a <u>Feb 8, 2024</u> introductory phone call:

   1. Plaintiff was involved in court matter and required counsel.

   2. Made aware of Plaintiff's life situation.

   3. Advised on following instructions, expectations were set.

   4. Advised on billing, expectations set for work Plaintiff approves.

7. BW confirmed that he understood and <u>accepted the requirements</u> in 6.3 and 6.4.

8. BW informed Plaintiff that certain aspects of Plaintiff's matter played no part in 6.1 and 6.2; the same matter C&C was retained for.

9. BW is Litigation Manager at the Tulsa office, and with that comes the expectation of experience. The C&C website had exclusively positive reviews across states, including OK. (EX A and 16)

   1. During <u>Feb 8</u> introductory call, before retainer agreement:

      1. Plaintiff informed BW of individual research and <u>did not</u> request any work. BW gave no indication that he intended to perform the Plaintiff's research again.

10. During <u>Feb 27, 2024</u> meeting, BW was instructed to write and email Plaintiff a summary of meeting notes from which to craft an offer letter for <u>the same day</u>. Property ($180,000) had an offer, so it was <u>timely, and</u> BW did not follow instructions.

    1. A real estate contract for $180,000 was "on the table."

    2. Offer letter involved different property sales and was also a timely matter.

    3. BW was specifically instructed not to engage in or perform an "introductory call." <u>Plaintiff approved acceptance of service</u>. "Phone call with OC to discuss settlement" was billed.

    4. <u>Feb. 29</u>, emailed a complaint to BW.

   5. <u>Mar. 1</u>, Received an invoice for unapproved work.

   6. Billed for form letter "introductory status report" before any work had been approved, BW's added-in content was just a few bullet points.

11. On <u>Mar 4th</u>, Plaintiff instructed BW to <u>set a firm deadline</u> for the offer created and requested to be <u>cc'd on all</u> communications.

    1. BW emailed opposing counsel at 3:30 PM <u>without a deadline</u> and <u>did not</u> cc Plaintiff.

    2. BW is aware of <u>the timely</u> active contract on the property, see 10.

    3. Plaintiff requested BW's email to opposing counsel, learned it was <u>devoid of a fixed deadline,</u> and was forced to email an opposing party directly with a 7 p.m. deadline.

12. After already rejecting a real estate contract at <u>7:30 p.m. on Mar 4</u>, on <u>Mar 5, we</u> learned that on <u>Mar 4, at 5:36 p.m.,</u> BW received a response from OC but failed to inform Plaintiff before the 7 p.m. Deadline, see 10.

13. Plaintiff organized the removal of BW from the case due to 5-12:

    1. <u>On March 5, 2024, at 9:15 PM,</u> emailed BW to discuss problems and a subsequent phone call.

    2. Unproductive discussion:

       1. BW adopted a combative stance.

       2. Before a retainer, Plaintiff's requirements were acceptable, see 6-7.

       3. After Plaintiff's retainer, BW said hands were being tied in 13.2.1.

14. With 11 days left to respond to an existing complaint, wrote BW:

    1. Compromise to resolve the billing problem in 5.

    2. Conveyed the damage to Plaintiff's case herein.

    3. BW suggested wanting things for free to Plaintiff in email.

15. Plaintiff filed Bar Association complaint, requested the return of retainer to BW.

16. Researched LLP "Cordell & Cordell" further and found substantial differences between C&C's website reviews versus those on Yelp or the BBB, for example.

### III. CAUSES OF ACTION

17. **§12A-3-307 Notice of Breach of Fiduciary:** "other representative owing a fiduciary duty with respect to an instrument"
    1. In 5-6, 11-13, it is evidenced that BW had detailed awareness of the Plaintiff's real estate contract and that, as a result of actions breached fiducuary duty.
    2. Was aware of the Plaintiff's personal life situation.
    3. Was aware of Plaintiff's financial situation.
18. **§21-93 Negligence:** when so employed, BW showed want of such attention to the probable consequences of the acts/omissions evidenced in 5–13.
19. **§23-21 Breach of contract:** In 5-13, then 14-15, Plaintiff attempted a compromise to prevent further damage to case, BW/C&C made none. Contracting C&C/BW, the expectation they'd follow ABA rules is implict:
    1. Rule 1.16: "*Declining Or Terminating Representation, Assisting the Client upon Withdrawal*"
    2. Rule 1.2: "*a lawyer shall abide by a client's decisions concerning the objectives of representation*"
    3. Rule 1.5(a)(4): "*the amount involved and the results obtained*"
20. **12A§2-721 Misrepresentation**: In 9, 16, Plaintiff led to believe C&C's specialization in law and led to believe an accurate market sentiment was represented on the C&C corporate website "reviews," ABA rule is violated:
    1. *ABA Rule 7.1: Communications/Lawyer's Services: [..] shall not make a false*

*or misleading communication about [..] services. "A communication is [..] misleading if it [..] omits a fact necessary to make the statement [..] not materially misleading"*

## IV. DAMAGES

2. WHEREFORE Plaintiff request this court enter the Judgement against the DEFENDANTS on claims for relief, PLAINTIFF:

   1. Requests his retainer of $2500 returned in its entirety as a result of 17-20.

   2. Requests all other billing attempts be vacated because of 19.

   3. Requests relief on failed real estate transactions which were in excess of $75,000 as a result of 17-18.

   4. Appears pro se, was left unable to afford an attorney as a result of 17-20 for this and other matters, which suggests relief that is deemed right and proper.

Respectfully submitted,

BY: _____

ISAAC FERREIRA

VERIFICATION ATTACHED

ATTORNEY CONSIDERATION CLAIMED/JURY TRIAL DEMANDED

## VERIFICATION

STATE OF OKLAHOMA )
)
COUNTY OF TULSA )
) ss:

ISAAC FERREIRA, I have composed the above documents.

*ISAAC FERREIRA*

SUBSCRIBED AND SWORN date **4-22-2024**

*Logan K. Beadles*
NOTARY

expires: **7-11-2026**

Exhibit A:

CAPTURED REVIEWS OF AJACENT STATES ON C&C WEBSITE:

- Cordell Cordell Reviews Arkansas Little Rock.pdf
- Cordell Cordell Reviews California Reviews.pdf
- Cordell Cordell Reviews Colorado Boulder Colorado Springs.pdf
- Cordell Cordell Reviews Kansas Wichita.pdf
- Cordell Cordell Reviews Missouri Sunset Hills Independence.pdf
- Cordell Cordell Reviews New Mexico Albuquerque.pdf
- Cordell Cordell Reviews Texas Austin Fort Worth.pdf
- reviews OK.pdf
- VA Reviews - Cordell & Cordell.pdf

AS ADVERTISED ON C&C WEBSITE:

**94%** Client Satisfaction Rating     **A+** BBB Rating

IN THE MARKET IS A 42% SATISFACTION RATE BASED ON BBB AND YELP:

       

Customer Reviews ★★☆☆☆ 2.1/5 Average of 40 Customer Reviews

BBB Rating & Accreditation  A+  Accredited Since: 4/1/2015  Years in Business: 34

Brands › Cordell & Cordell
**Cordell & Cordell**
2.2 (251 total reviews)
based on 99 locations
cordellcordell.com

OKLAHOMA REFLECTS ONLY NEGATIVE "1 STAR" REVIEWS on YELP:



**Frank M.**
Lawton, OK
Jan 31, 2024

Divorce. Twice told to go to court. First time, they did not bother to show and did not bother to tell me that the court date had been switched. An hour and a half before they finally got ahold of me. call service pings you around. I got charged over 700 for asking why they did not show. Fast forward month, I get a call saying we have court tomorrow. I verified a week ago that there was no court that day. Either I have a wet behind the ears lawyer costing her company money by chasing away clients OR they intentionally do this so that they can charge you extra money. When I told my lawyer this, she elected to step down. New lawyer, sensitive. Don't go here. I should have read the reviews.



**Matthew A.**
Anadarko, OK
Sep 7, 2017

Absolutely horrible company! They get the attention of dad's that want more time with their kids, and claim that they care about their clients and their cases. This couldn't be further from the truth!!!

They will bill you for every single thing possible. They bill you for 10 mins just to return an email that takes maybe 30 seconds to respond to. I was billed each week for two attorneys to have a discussion about my case when nothing had been done on my case in over two weeks!



**J D.**
Norman, OK
Nov 28, 2016
First to Review

Do not use these Lawyers. All they want is your money and do nothing in return. I basically had to do all the negotiation with my ex wife to take care of my divorce, you know the things your lawyers are supposed to do. They charge out the ass for everything. $53.00 for a phone call to opposing counsel. Get Bent! Save your money and do not believe the ads on TV. These lawyers are terrible.



**Gary R.**
Owasso, OK
May 9, 2017
First to Review

It's too bad Yelp! doesn't offer a "negative 5-Stars" because this business would qualify!

If you're considering Cordell Cordell to represent you in a legal matter think twice. I had a terrible experience with this firm. I was told the attorney (Christian) recommended for my case was "aggressive" and could "get the job done." NOTHING could be further from the truth! It seemed, at times, my attorney was working in concert with the opposite attorney and against me. Additionally, I had to call my attorney many times for status of my case.
I was made to feel my case was minuscule and "didn't matter" (by my attorney) because I didn't want to spend $10,000 and wait a year to get full custody of my son. Well, here I am a year later, $10,000 deeper in debt and still don't have full custody of my son. Complete waste of my time and money!